[Civ. No. 4577.   Third Appellate District.—January 21, 1933.]

WILBURN SMITH et al., Appellants, v. CALIFORNIA THORN CORDAGE, INC. (a Corporation) et al., Respondents.

Lorrin Andrews for Appellants.

George I. Devor, *in pro. per.*, Finlayson, Bennett & Morrow and Lee Combs, Jr., for Respondents.

TUTTLE, J., *pro tem.*—This action was brought under the provisions of section 315 of the Civil Code to set aside an election of the directors of a defendant corporation, and for an injunction to prevent certain defendants from acting as officers and directors of said corporation. Defendant Thorn filed a cross-complaint praying that he be adjudged owner of 1632 shares of the capital stock of the corporation. The trial court entered judgment giving no relief to plaintiff, but granting the relief sought by defendant upon his cross-complaint. This appeal is prosecuted by plaintiffs from said judgment.

Pursuant to a call issued by the secretary of defendant corporation, a special meeting of the stockholders was held on July 6, 1929. The following were elected as directors at said meeting: Defendants Thorn, Langdon, Devor, Williams, Sawyer, Weiss and Chambers. Thereafter the directors elected Thorn president, Williams vice-president, Langdon secretary, and Sawyer treasurer. Prior to . said election plaintiffs Smith, Lyday, Richey and Cassidy were directors of said corporation, but, as indicated, failed to be re-elected at the July meeting.

While some attack is made upon the validity of the call for the stockholders' meeting, it is admitted by all parties that the real question at issue at the trial was the right of defendant Thorn to vote 1632 shares of common stock. If he had no such right, a quorum was not present (as required by the by-laws) and no election of directors could be had.

The undisputed facts show that defendant corporation was organized in 1924, for the purpose of manufacturing rope and twine. Defendant Thorn was one of the organizers and promoters of the company, and always took an active and dominant part in its management and affairs. Promotion stock in the amount of 1632 shares was issued to Thorn and, under the rules of the state corporation commissioner, were deposited in escrow with National City Bank of Los Angeles. Thorn parted with no monetary consideration when he acquired the stock, it being issued in consideration of services rendered the corporation. On and prior to December 2, 1926, one William Diller was a creditor of said corporation, having loaned to it large sums of money, secured by mortgages upon the real and personal property. These claims were assigned to plaintiff Cassidy, who had filed suit to foreclose said mortgages. During said time plaintiff Smith was a large creditor of the company, and his loans were all overdue and unpaid. Diller and Smith were the largest stockholders so far as actual cash purchases of stock were concerned.

On December 2, 1926, Diller, Smith and Thorn executed an agreement concerning the affairs of the corporation. This agreement was merged into a second agreement, dated December 16, 1926. It recites that certain differences had arisen between the parties who were stockholders and directors of the corporation, in respect to its financial affairs and management. It is agreed that a finance committee be formed, composed of Diller, Smith and Lyday, their appointment to be ratified by the directors, and that the by-laws be amended to give said committee the powers necessary to carry into effect the agreement. This committee is empowered to take complete charge and control of the finances of the corporation; to raise funds for the development of the corporation, either by sale of its capital stock or a bond issue, and to become guarantors upon its notes. Diller

agreed, when the directors had ratified the contract, to dismiss all actions brought by him against the corporation. Thorn agreed to resign as general manager and accept a position as director of sales and production. The latter, as party of the third part, also agreed as follows:

"6th: Said party of the third part hereby agrees to forthwith assign and transfer to said finance committee in trust all, to-wit: 1632 shares of the common capital stock of said corporation heretofore issued to and now held by him, subject to escrow under control of the commissioner of corporations of said state; and he further agrees to transfer to said committee all other shares of the common capital stock of said corporation which may hereafter be acquired by him or to which he shall be entitled by reason of permits heretofore or hereafter granted by said commissioner of corporations. The stock so transferred and delivered to said committee in trust shall be held by said committee for the following purposes, viz:"; then follows an agreement whereby 720 shares of said stock shall be returned to Thorn when all the indebtedness of the corporation has been paid, and the balance, 912 shares, to be divided among certain stockholders under certain conditions. It is provided that when all the obligations of the company have been discharged, the committee shall "automatically cease to exist and its powers shall thereafter be exercised by the board of directors of said corporation".

Shortly after the execution of this agreement, an application was filed with the corporation commissioner for permission to transfer the said 1632 shares of stock which were in escrow. This application refers to the contract and the agreement by Thorn to forthwith assign and transfer said stock to Diller, Smith and Lyday. It was executed by the corporation, and also signed by Thorn as vice-president. Attached to the application is the following document:

"Consent to Transfer of Stock of Escrow by Transferror and Transferees. I, John C. Thorn, the transferror of a total of sixteen hundred and thirty-two (1632) shares of the common capital stock of California Thorn Cordage, Inc., do hereby consent to the transfer thereof for the purposes and in the manner and to the transferees upon each and all of the terms and conditions set forth in that said duly executed amended application for permit to transfer and issue

stock in escrow, filed with the commissioner of corporations on the 16th. day of December, 1926. John C. Thorn (Signed) Transferror
Henry M. Lee (Signed)
Witness.''

Thereafter the corporation commissioner gave his written consent to the transfer of said stock, according to said application, to the said three parties as trustees. The secretary of the corporation then issued a new certificate of stock, number 248, in the name of the three trustees, and covering 1632 shares, which had formerly been represented by three certificates in the name of Thorn, numbers 203, 204 and 205. The new certificate was delivered to the bank, and the three other certificates were returned to the corporation. Indorsed upon each of said three certificates was the following language in the handwriting of Thorn:

''This stock certificate cancelled only on the condition of agreement dated December 16th, 1926, between William Diller, Dr. Wilburn Smith and John C. Thorn, and consent of Chester S. Lyday.''

Shortly after the execution of the agreement of December 16, 1926, Diller caused the suits commenced in his behalf to be dismissed, and the finance committee started to function and continued until July, 1929. Diller also advanced to the corporation, upon notes, many thousand dollars, which has never been repaid, nor has the indebtedness to Smith ever been discharged by the company.

Thorn resigned as general manager of the corporation, and was appointed director of sales and production, in accordance with the terms of the agreement.

With this background before us, we come to the stockholders' meeting of July 6, 1929. At said time this stock stood upon the books of the corporation in the names of Diller, Smith and Lyday ''in trust for J. C. Thorn''. None of the plaintiffs appeared at said meeting. Thorn, as vice-president, presided, and he presented the following document:

''To the Secretary of California Thorn Cordage, Inc., and to the Secretary of the meeting of the stockholders of said corporation held Saturday, July 6th, 1929;

''Please Take Notice that I hereby exercise my right to vote the 1632 shares of stock of which I am the beneficial

owner, and which stands in the name of Wilburn Smith, Chester S. Lyday and William Diller, as trustees, for myself.

"I exercise this right under Section 313 of the Civil Code of California, and upon the further ground that any agreement made by and between myself and the said named persons as trustees is void, illegal, and contrary to law.

"(In pencil) JOHN C. THORN"

Without this block of stock, a quorum would not have been present. Thorn was permitted to vote these shares and the election of new directors was held, as indicated.

The first question to be decided is the legality of the contract of December 16th. The trial court concluded that it was "contrary to public policy, is illegal, null and void". No serious contrary contention is made by appellants. Section 305 of the Civil Code read, when the contract was executed, as follows:

"The corporate powers, business, and property of all corporations formed under this title must be exercised, conducted, and controlled by a board of not less than three directors, to be elected from among the holders of stock."

A casual reading of the contract at once discloses that it is a bald attempt to usurp the powers and duties of the directors. For instance, the "finance committee" is given "complete charge" of the finances of the corporation; and they are empowered to raise funds by sale of stock or a bond issue, and when the indebtedness of the company has been discharged, they shall cease to function, and their powers "shall thereafter be exercised by the Board of Directors". Agreements of this character have been consistently condemned and held void by our courts, upon the ground that they are contrary to public policy. (*Manson* v. *Curtis,* 223 N. Y. 313 [119 N. E. 559, Ann. Cas. 1918E, 247]; *Jackson* v. *Hooper,* 76 N. J. Eq. 592 [75 Atl. 568, 27 L. R. A. (N. S.) 659, 664]; *Farmers' Gin Co.* v. *Rasch,* (Tex. Civ. App.) 277 S. W. 746; *Haldeman* v. *Haldeman,* 176 Ky. 635 [197 S. W. 376]; *Teich* v. *Kaufman,* 174 Ill. App. 306.) The prerogatives and functions of the directors of a stock corporation are definitely fixed and established by our Civil Code. The effect of this contract would be to withdraw from the directors of the corporation that control and direction of its corporate affairs, business and management which is vested in them by law and place such control and direc-

tion in the hands of three stockholders. Such contracts are clearly illegal and unenforceable in law and in equity.

Appellants contend that the contract is divisible, and that the portion thereof which relates to the assignment and transfer of Thorn's stock is legal, though the other portions may be illegal. We are unable to agree with this construction. Without further elaboration, we hold that the legal provisions are so inextricably interwoven with the illegal that they cannot be separated therefrom. The main purpose—that these three men shall perform the most vital functions of the corporation—being illegal, the secondary stipulations fall with it. (*Manson* v. *Curtis, supra.*) The contract is single and indivisible, and the illegal part cannot be expunged.

We now come to the question as to what relief, if any, should be granted to either of the parties to the action. The judgment denied any relief to plaintiff. On the other hand, defendant was granted everything he asked, under his cross-complaint. He was adjudged to be the owner and holder of the 1632 shares of stock. It was decreed that he could vote them, and that Smith, Diller and Lyday had no right, title or interest in said stock and their claims to the same were adjudged wrongful. All certificates of shares (Nos. 203, 204, 205 and 248) are ordered delivered up and canceled by the secretary of the corporation, and the secretary ordered to issue a new certificate to Thorn for 1632 shares of stock, and the secretary is ordered to make an entry in his books showing Thorn to be the owner of said stock.

Appellants contend that the trial court erred in granting such relief to defendants. Conceding that the contract was illegal, they insist that as the parties were *in pari delicto,* the court must leave them where it finds them. No principle of law is better settled than that a party to an illegal contract cannot come into a court of law and set up a case in which he must necessarily disclose an illegal contract as the groundwork of his claim. (13 Cal. Jur. 492.) In the case of *Dunn* v. *Stegemann,* 10 Cal. App. 38 [101 Pac. 25, 26], it is said: "It is well established that no recovery can be had by either party to a contract having for its object the violation of law. *The courts refuse to aid either party,* not out of regard for his adversary but because

of public policy. Where it appears that a contract has for its object the violation of law, the court should *sua sponte* deny any relief to either party.''

In *Domenigoni* v. *Imperial Live Stock, etc.*, 189 Cal. 467 [209 Pac. 36, 39], the court stated: ''But it does not follow that the plaintiff was entitled to any relief. The entire transaction was an attempt to circumvent the law. . . . In such a case the court will give no relief even if the point is not raised by either party.''

In 6 R. C. L., at page 826, the following appears: ''In cases in which the parties are *in pari delicto* the courts not only refuse to enforce rights arising out of an executory illegal contract, but even where the contract has been executed in whole or in part by one of the parties, as for instance by the payment of money, the courts, notwithstanding the fact that the other has received the benefit thereof without giving anything in return, generally refuse to give relief, unless, as will be seen, the former repudiates the contract before the execution of the unlawful purpose.''

In 6 R. C. L., at page 825, it is stated: ''Where the parties are *in pari delicto,* no affirmative relief of any kind will be given to one against the other. The only equitable remedies which they can obtain are such as are purely defensive.''

Under the foregoing authorities, where the parties to an illegal contract are *in pari delicto,* the courts will not, on the one hand, undo what has been done, nor on the other, perfect what has been left unfinished.

In an attempt to justify the trial court in granting affirmative relief concerning the subject matter of the contract, respondents take the position that defendant John C. Thorn did not rely upon the contract in making out a case under his cross-complaint. The record shows that he refers to the contract in his pleading, and alleges that it is illegal. He also sets up the fact that he never transferred the shares of stock, and that the purported transfer was without authority from him. It is true that if certain property is transferred, not pursuant to an illegal agreement, but independent of that agreement, the illegality will not be a defense in an action brought to recover the same. But the cases which we have cited hold that if the transfer is made pursuant to or purporting to have been made in the carry-

ing out of the terms of the contract, the court will leave the parties just where it found them. It may be true that the defendant John C. Thorn is not seeking relief under the terms of the contract. What he *is* trying to do is to restore his own *status quo* by taking from the other parties property which he had transferred under the illegal agreement, pursuant to its terms and conditions, something which, in this particular action, is not only wholly inequitable, but contrary to the express policy of the law. To this, the answer of respondents is that the court is changing nothing, and that the stock was legally his own property when the action was commenced. In the contract defendant Thorn "forthwith agrees to assign and transfer the stock". As an officer of the corporation John C. Thorn signed an application to the commissioner to have such transfer made. Attached to this application was his writing, wherein he stated that "I hereby consent to the transfer thereof." As defined in 12 C. J., page 519, "consent" as a verb "implies not merely that a person accedes to, but authorizes an act". The foregoing was sufficient authority for the carrying out of the stock transfer, so that the stock finally stood in the names of the parties as designated by the contract. We see no reason for giving extended consideration to the argument of respondents that title never passed under the contract, it being executory in character. Suffice it to say that the transfer of the stock to three of the plaintiffs was pursuant to the terms of the illegal agreement, and when this action was commenced the stock stood in their names, and there, we believe, it should be left. The law does not undertake, in such cases, to settle any question of conscience between the parties. It found this stock to be in the names of these three plaintiffs as trustees. With the contract a nullity, the situation in which the parties are left may be anomalous, but that is one of the penalties which those who contract in defiance of the law must suffer.

The case is one where neither party has come into court with clean hands, but we are not prepared to lave one or the other. And yet, to permit this judgment to stand would outrage all considerations of equity. Since the contract was executed, plaintiffs dismissed their actions to enforce their obligations against the corporation, and have advanced to it thousands of dollars upon the faith of defendant Thorn's

promises, and in reliance upon their ability to hold and vote this stock and thus control the affairs of the corporation. The evidence shows that at the March stockholders' meeting of the corporation in 1927, Thorn sat by and saw plaintiffs vote this stock, without protest. (We cite the latter instance merely to indicate the attitude of Thorn, and do not intimate that estoppel is available to plaintiffs in a case of this character.) And while plaintiffs have altered their positions to their financial prejudice, Thorn is permitted to take away from them the stock which he had transferred to them, pursuant to the contract. The granting of such relief is contrary to the principles governing actions of this character.

As to plaintiffs, they are not entitled to any relief in respect to the legality of the meeting of July 6th for the reason that their claim to vote the stock is based upon this illegal contract.

We conclude that the record shows that both parties entered into an agreement to circumvent the law, and that such agreement is therefore illegal and void, and that the law will not transfer the subject matter of the contract from one to the other, but will leave the title and possession of the stock just as it stood when the action was commenced.

The judgment is reversed, with directions to the trial court to dismiss the action.

Thompson (R. L.), J., and Pullen, P. J., concurred.