[L. A. No. 17214. In Bank.—March 21, 1940.]

LULA G. LAWRENCE et al., Respondents, v. I. N. PAR-LIER ESTATE COMPANY (a Corporation) et al., Appellants.

Hayhurst & Gibson for Appellants.

W. M. Conley, Philip Conley, Matthew Conley, R. Z. Lamberson and Conley, Conley & Conley for Respondents.

CARTER, J.—This is an appeal by defendants from a judgment of the Superior Court of Fresno County in an action brought pursuant to section 315 of the Civil Code to determine the legality of the removal of five previously elected members, and the election of three new members of the board of directors of the I. N. Parlier Estate Company, at a special meeting of the stockholders of said company.

The I. N. Parlier Estate Company is a California corporation, organized in 1915 by I. N. Parlier and members of his family. The properties of said corporation consist principally of valuable vineyards situated in the San Joaquin Valley. Since the death of I. N. Parlier, the major portion of the company's stock has remained in the hands of members of his family and the company has been under the management of C. A. Parlier, a son of I. N. Parlier.

A special meeting of shareholders was called by the board of directors for October 15, 1938, at the written request of two of the shareholders under the provisions of section 313 of the Civil Code.

At the time of said meeting, the company had issued 2499 1/9 shares of its capital stock. Nora Ousterhoudt, the owner of 415 6/9 of said shares, had died and in the probate of her estate this stock had been distributed to the corporation. It was agreed by all parties that this stock, being owned by the corporation itself, assumed the status of treasury stock and could not be voted at a shareholders' meeting. It was found by the trial court that Bessie N. Parlier, formerly an owner of one share of stock, was not a shareholder at the time of the meeting. This left 2082 4/9 shares of issued stock which might be represented and voted at the special meeting.

On October 15, 1938, the books of the company showed the following ownership of the issued stock: Lula G. Lawrence 277 7/9 shares; Carrie A. Thomas, 277 7/9 shares; C. A. Parlier, 277 7/9 shares; C. A. Parlier, as trustee for I. N. Parlier Estate Company, 275 7/9 shares (the latter stock was pledged by G. W. Parlier to secure his indebtedness to the

I. N. Parlier Estate Company) ; J. B. Parlier, 277 7/9 shares; Ada Sharp, 415 7/9 shares; National Bankitaly Company, 275 7/9 shares; G. W. Parlier, 2 shares, and W. W. Parlier, 2 shares.

The 275 7/9 shares of stock registered in the name of the National Bankitaly Company were transferred to that company by W. W. Parlier in 1927. It will here be noted that by an "agreement of merger" made October 15, 1930, the National Bankitaly Company was merged with the Corporation of America, and all the property of the former passed to the merged Corporation of America. No change in the names of the corporate owners of this stock was ever made on the books of the Estate Company, but proxies of the Corporation of America had been permitted to vote said shares of stock without objection since the date of the merger. The 277 7/9 shares of stock registered in the name of Carrie A. Thomas are still owned by her although she has assumed the name of Procter since her marriage.

With regard to the stock registered in the name of C. A. Parlier, as trustee, the evidence shows that long prior to the special shareholders' meeting of October 15, 1938, G. W. Parlier, J. B. Parlier and Ada Sharp had each borrowed considerable sums of money from the I. N. Parlier Estate Company, and that each of them to secure repayment of such loans, had endorsed the certificates of stock representing their shareholdings (with the exception of two shares of G. W. Parlier's stock) to the I. N. Parlier Estate Company, or to C. A. Parlier, as trustee for the I. N. Parlier Estate Company. These certificates, so endorsed, had been delivered to the company, or to C. A. Parlier to hold for the company. The G. W. Parlier stock certificate had been so endorsed and delivered in 1935. Prior thereto, the certificates of J. B. Parlier and Ada Sharp had likewise been endorsed and delivered.

No transfer on the books of the Estate Company was made as to any of this stock before July 22, 1938, and G. W. Parlier, J. B. Parlier and Ada Sharp attended annual shareholders' meetings in the years 1935, 1936, 1937, and 1938, and, at each of said meetings, voted the stock represented by the certificates standing in their respective names, without challenge or objection. On July 22, 1938, without direction from the board of directors and without notice to G. W. Parlier, C. A. Parlier caused a cancellation of the stock certificate

issued to G. W. Parlier and the issuance to "C. A. Parlier, as trustee for the I. N. Parlier Estate Company", of a certificate representing the 275 7/9 shares formerly held by G. W. Parlier.

At the special meeting held on October 15, 1938, the shareholders divided into two groups, which, it has been stipulated, voted against each other consistently on all measures. C. A. Parlier in his individual capacity and as trustee, J. B. Parlier, Ada Sharp and W. W. Parlier, whom we will designate as the defendant group, voted as one unit. The other shareholders, whom we will describe as the plaintiff group, voted as another unit. According to the stock books of the company, after the transfer of the G. W. Parlier stock, the defendant group represented 1249 1/9 shares, and the plaintiff group 833 3/9 shares.

The special meeting was called to order by the president of the company, and, as a quorum was present, the meeting proceeded to the consideration of business. There was then presented and filed, a written request and direction to C. A. Parlier to vote all the stock held by him or standing in his name "as trustee or in any other fiduciary capacity" for the removal of all the directors of the company and thereafter to vote in favor of G. W. Parlier, Lula G. Lawrence, and E. B. Campbell as new directors. This request was signed by Lula G. Lawrence, Corporation of America by E. B. Campbell, Philip Conley and H. L. Jacobs, its proxies, Carrie A. Procter, by Lula G. Lawrence, her proxy, and G. W. Parlier.

A motion was made by C. A. Parlier to adjourn the meeting for two weeks to October 29, 1938. Again, as trustee, he was requested and directed by the plaintiff group of stockholders to vote all the stock so held by him against adjournment. The chair refused to recognize the right of the Corporation of America to vote the shares claimed by it, and refused to recognize the right of G. W. Parlier to vote more than two shares of stock, ruling that C. A. Parlier, as trustee for the I. N. Parlier Estate Company had the right to vote the other 275 7/9 shares claimed by G. W. Parlier.

All of the stock of the defendant group (as of record, 1249 1/9 shares) was voted in favor of the motion for adjournment. It was declared carried, the meeting was declared adjourned for two weeks and the defendant group left the meeting.

Refusing to recognize the meeting as adjourned, the plaintiff group of shareholders remained. They proceeded to elect a temporary chairman and a temporary secretary, passed a motion removing all of the then members of the board of directors, consisting of W. W. Parlier, J. B. Parlier, G. W. Parlier, C. A. Parlier, and Lula G. Lawrence, and elected Lula G. Lawrence, G. W. Parlier and E. B. Campbell as directors. At this meeting, the stock standing on the books in the name of the National Bankitaly Company was voted by the proxies of the Corporation of America, and that in the name of Carrie A. Thomas was voted by the proxy of Carrie A. Procter, formerly Carrie A. Thomas. G. W. Parlier also voted the 275 7/9 shares of stock pledged by him to secure his debt to the I. N. Parlier Estate Company, and for which a certificate had been issued to C. A. Parlier as trustee, on July 22, 1938.

It is apparent that this case turns on the question of whether each of the plaintiffs herein legally had the right to vote his stock, for if any one of them did not, the motion to adjourn the meeting for two weeks to October 29, 1938, was carried, and no further business could have been transacted by the shareholders on October 15, 1938.

The trial court found that G. W. Parlier was the owner and holder and entitled to vote the 275 7/9 shares pledged by him to the corporation; that the proxies of the Corporation of America had the right to vote the 275 7/9 shares standing on the books of the company in the name of National Bankitaly Company and that the proxy of Carrie A. Procter had the right to vote the 277 7/9 shares standing on the books of the company in the name of Carrie A. Thomas; that a special meeting of the stockholders of said corporation was duly and regularly called and held on October 15, 1938, at which meeting G. W. Parlier, E. B. Campbell and Lula G. Lawrence were elected members of the board of directors of said corporation.

Judgment was entered in favor of plaintiffs in accordance with the findings of fact decreeing that the three directors above named constitute the board of directors of said corporation and that any and all claims and assertions of defendants J. B. Parlier, C. A. Parlier, Ada Sharp, W. W. Parlier, and Bessie N. Parlier, to the contrary are without right or justification and said last-named parties are enjoined and

restrained from doing any act in support or furtherance of any such claim or assertion.

In the presentation of their appeal to this court, the defendants do now, and have throughout maintained, that only persons in whose names shares stand on the stock records of the corporation on a certain designated date before a stockholders' meeting may be entitled to vote and that said stock records are conclusive. Furthermore, defendants challenge the sufficiency of the call for and notice of the meeting, claiming that a board of directors cannot be removed and new directors be elected unless the call and notice state specifically that said matter will be taken up at the meeting.

On the other hand, the plaintiffs contend that the mere surface showing of shareholders on the books of a corporation is not binding and conclusive; especially when such showing is fraudulently procured by minority shareholders to perpetuate their control of the corporation; and, that in a proceeding under Civil Code section 315, the trial court may determine the shareholders legally entitled to vote at the election in question. Plaintiffs further contend that when a shareholder has pledged his stock to the corporation with the understanding that his stock certificate is not to be cancelled and a new one issued, a "trustee" for the corporation who has control of the books cannot secretly and fraudulently cancel said certificate and issue a new one in his own name for the purpose of controlling an election of directors. Plaintiffs also assert that a corporation cannot vote its own stock, either directly or indirectly through a trustee and thereby control the election of directors.

Since the right of G. W. Parlier to vote the stock which he had pledged to the I. N. Parlier Estate Company and which now stands on the company records in the name of C. A. Parlier, as trustee for the company, is the one most strongly disputed, we shall proceed first to a consideration of this proposition.

The provisions of the Civil Code pertaining to the origin and government of corporations were amended in 1931. (Stats. 1931, p. 1762 et seq.)

Section 310 of the Civil Code provides that a board of directors of a corporation "may be removed from office by a vote of shareholders holding a majority of the outstanding shares entitled to vote at an election of directors".

Section 313 of the Civil Code authorizes the calling and holding of special meetings of the shareholders.

Section 316 of the Civil Code provides that the presence of a majority of the shares entitled to vote at any meeting shall constitute a quorum for the transaction of business. After the meeting is once regularly opened with a quorum present, the withdrawal of part of the shareholders does not interfere with the power of those remaining to transact business until the adjournment of the meeting.

Section 330.1 of the Civil Code provides the manner in which title to certificates and the shares represented thereby may be transferred.

Section 320a of the Civil Code contains the following:

"Subject to the provisions of sections 320b and 320c of this title, only persons in whose names shares entitled to vote stand on the stock records of the corporation on the day three days prior to any meeting of shareholders, or, if some other day be fixed for the determination of shareholders of record, then on such other day shall be entitled to vote at such meeting."

Section 320b of the Civil Code contains the following:

"(1) Shares standing in the name of any person or persons or pledgee, trustee or other fiduciary may be voted and all rights incident thereto may be exercised only by such pledgee, trustee or other fiduciary in person or by proxy, and without proof of authority."

■ Preliminarily, we may say that an action under Civil Code section 315 is in the nature of an equitable proceeding in which the court will consider all matters necessary to a proper determination of the validity of the contested election, and also all matter necessary to a just direction of the relief required in each instance. (*Whitehead* v. *Sweet,* 126 Cal. 67 [58 Pac. 376]; *Smith* v. *California Thorn Cordage, Inc.,* 129 Cal. App. 93, 102 [18 Pac. (2d) 393]; *Peterson* v. *Taggart,* 1 Cal. App. (2d) 468 [36 Pac. (2d) 1086].)

■ We recognize that under the provisions of the above-mentioned Civil Code section 320a, stock records are now regarded as conclusive upon election officers as to the right to vote, provided the shares are valid and entitled to recognition as the records disclose. (6A Cal. Jur. 852.)

The purpose for which this section was enacted, however, was to relieve election officers from the embarrassing and awkward position of having to determine at every election

who had the right to vote the shares of stock claimed by more than one stockholder, or the validity of the claims of others whose right to vote was challenged.

It was never intended to decide finally and conclusively the right to vote stock of a corporation irrespective of the method by which the recitations of stock ownership on the books of the corporation were procured. To so hold would be to fashion from the statute a cloak for fraud which it cannot be presumed was the legislative intendment.

This construction is borne out by the fact that such stock records are not conclusive on the courts as to the ownership of stock and the fact that remedies are provided by which rival claimants may litigate their disputes. (6A Cal. Jur. 852 et seq.) So, also, it is provided that a shareholder may contest an election for invalidity, whereupon all factors requisite to a determination of the legality of the election will be reviewed, including, where necessary, the question of whether or not certain votes were properly cast.

The facts as to the pledge of his stock to the I. N. Parlier Estate Company to be held by C. A. Parlier, as trustee, are not disputed by G. W. Parlier. He does, however, claim that as a part of the said pledge contract it was implied that the pledged property should not be registered in the name of the pledgee or the trustee of said pledgee and that the pledgor was to retain the right to vote the stock which he owned, subject to the lien of the pledgee.

It is elementary that every pledge has its inception in contract. (Civ. Code, sec. 2987.) Likewise, it is not now, and it was not under former law, essential to the creation of a valid pledge that a transfer on the books of a corporation be made. A pledgee of corporate stock, even though the pledge be not entered on the books, becomes vested with a legal interest or special property therein. The stock certificate assigned to him is recognized as evidence of right and ownership and confers upon the legal holder thereof the right to protect that interest. (6A Cal. Jur. 720.) Therefore, it was not essential to the validity of the pledge in question that the stock certificate be canceled, reissued by the company, and registered in the name of its trustee.

Of course, a pledgee has a right to register the shares to himself when he holds the certificate by proper endorsement or assignment, but we see no reason why he should not be allowed to contract not to exercise such right. And it is-

still the rule that a pledgee may vote the pledged shares only if they have been registered in his name (Civ. Code, sec. 320b), for if the shares be not registered to him, the pledgor remains the voting registered owner. ■ In addition, a pledge contract need not be in writing or express, but it may be implied from the facts and circumstances of the case. (12 Fletcher, Cyclopedia Corporations, Perm. Ed., vol. 12, pp. 832, 833.)

In order to sustain their contention that as part of the pledge contract an implied agreement existed that G. W. Parlier was to retain the right to vote his stock, plaintiffs point out that the conduct of the corporation over a period of years, as to all the shareholders from whom it had accepted pledges of stock, was to refrain from a cancellation and reissuance of the stock certificates and to permit such pledgors to retain their voting rights. Not only did G. W. Parlier vote his stock for three and one-half years after the last date of the renewal of his pledge, but Ada Sharp, and J. B. Parlier, the other pledgors, likewise did and still do vote the stock which they so pledged.

■ By the finding that each of these pledgors retained the right to vote his own stock, the trial court in effect found such an agreement to exist. Viewing all of the circumstances surrounding this case, namely: That this corporation is a family corporation, managed and controlled principally by the members thereof; that the practice over a period of years had been to permit those who pledged their stock to the company as security for loans to vote said stock; that the only stock cancelled and reissued was that of the one pledgor whom the trustee and manager of the corporation admitted on the witness stand supported the group of stockholders opposed to him; that said cancellation was made without direction from the board of directors and without notice to said pledgor,—we are constrained to agree with the trial court and sustain the finding that G. W. Parlier had the right to vote the stock which he owned at the time of the special shareholders' meeting on October 15, 1938.

■ In this connection, we deem it well to point out that it has ever been the rule that the powers of officers and directors of a corporation must be exercised in good faith and with a view to the best interests of the shareholders as well as of the corporation.

While it is not our purpose in this opinion to outline specifically what C. A. Parlier should have done with respect to the stock certificates pledged to the corporation for the purpose of protecting the rights and interests of the corporation therein, we do wish to state unequivocally that he should not have so manipulated said stock certificates as to gain any personal advantage to himself to the detriment of either the corporation or its stockholders or the owners of said stock.

The relationship of the director of a corporation to the corporation and its stockholders and the standard of conduct required of him has often been defined: In the case of *Schwab* v. *Schwab-Wilson Machine Corp.*, 13 Cal. App. (2d) 1, 3 [55 Pac. (2d) 268], the court said:

"A corporate director acts in a fiduciary capacity, not only towards the corporation itself (Cal. Jur., vol. 6A, p. 1100), but also towards the stockholders. As expressed in *Wickersham* v. *Crittenden*, 93 Cal. 17, 29 [28 Pac. 788]: 'The directors of a corporation hold a fiduciary relation to the stockholders, and have been entrusted by them with the management of the corporate property for the common benefit and advantage of each and every stockholder, and by their acceptance of this office they preclude themselves from doing any act or engaging in any transaction in which their private interest will conflict with the duty they owe to the stockholders, and from making any use of their power or of the corporate property for their own advantage.' "

See, also, *Cooper* v. *Spring Valley Water Co.*, 171 Cal. 158, 162 [153 Pac. 936]; *Angelus Securities Corp.* v. *Ball*, 20 Cal. App. (2d) 423, 431 [67 Pac. (2d) 152]; *Angelus Securities Corp.* v. *Ball*, 20 Cal. App. (2d) 436, 439 [67 Pac. (2d) 158].

In reviewing the evidence, we find that by way of explanation of his conduct in transferring to himself as trustee the G. W. Parlier stock only, C. A. Parlier testified that he believed that all of the pledged stock should have been reissued to himself as trustee, but that he had had time to transfer only that of the one pledgor admittedly hostile to him—and this, in spite of the fact that he had had the pledged stock in his hands for some four or five years, and did in fact transfer the G. W. Parlier stock approximately eighty-five days before the special meeting of October 15, 1938. The fact that on cross-examination C. A. Parlier admitted that

he had discussed the transfer with his attorney prior to the date thereof on July 22, 1938, and that he "knew there was going to be trouble of some kind, but I didn't know what is .was" completes a picture which smacks altogether too much of manipulation of stock records by an officer of the corporation for the purpose of advancing his own interests.

If there had been no implied contract not to register the pledgee's interest, and C. A. Parlier, as general manager of the company, had in good faith believed it his duty for said company's protection to register its interest as pledgee, he should have been required to do so in an impartial and equable manner and have been precluded from exercising his powers solely in the interest of keeping himself in control of the corporation. Such a standard of conduct is approved in *Italo Petroleum Corp.* v. *Producers' Oil Corp.*, 20 Del. Ch. 283 [174 Atl. 276] , *Western States Life Ins. Co.* v. *Lockwood*, 166 Cal. 185, 190 [135 Pac. 496], and *Wickersham* v. *Crittenden*, 93 Cal. 17, 29 [28 Pac. 788].

The question has been raised as to the right of C. A. Parlier, as trustee, to vote the pledged stock held by him in trust for the corporation. The conclusion which we have reached on the other issues renders it unnecessary to determine this question. However, we wish to point out that the rule has long been established that a corporation cannot vote either directly or indirectly, stock of which it is the owner (*Brewster* v. *Hartley*, 37 Cal. 15 [99 Am. Dec. 237] ; *Ex parte Holmes*, 5 Cowen (N. Y.), 426 ; *American Railway-Frog Co.* v. *Haven*, 101 Mass. 398, 402 [3 Am. Rep. 377] ; 5 Fletcher Cyclopedia of Corporations, Perm. Ed., p. 152), and we do not believe that the legislature intended by its enactment of Civil Code section 320b to change this long-established rule, the obvious purpose of which is to secure honesty and fairness in the administration of corporate business.

Although it is the settled rule that a pledgor retains the ownership of his stock, and that a pledgee has a mere lien thereon, it is provided by statute in this state that a pledgee may register as such and secure thereby the right to vote said stock. If stock pledged to a corporation, and held by a trustee to prevent its merger, might be registered in the name of such trustee and accorded the naked legal right to vote, since ownership remains in the pledgor sub-

ject only to said pledgee's lien, it might, by this means be possible to circumvent the rule prohibiting the voting of stock by a corporation in which it has the beneficial ownership.

The substance of the correct rule to be followed was stated by the Supreme Court of New York in *Ex parte Holmes,* 5 Cowen (N. Y.), 426, 434, where, under a general statute stating that shares of stock should be voted only by those in whose names it stands on the transfer books of the company at the time of an election, the court said:

"No doubt the company may, from necessity, as in this case, take their own stock in pledge or payment; and keep it outstanding in trustees to prevent its merger; and convert it to their security. But it is not stock to be voted upon within the meaning of the charter, or the general act upon which we are proceeding. It is not to be tolerated that a company should procure stock, in any shape, which its officers may wield to the purposes of an election; thus securing themselves against the possibility of removal."

We have examined and found little merit in defendant's contention that the Corporation of America was not entitled to vote its stock at the special meeting on October 15, 1938, because the stock was originally issued and remained on the company's records in the name of the "National Bankitaly Company".

With regard to the merger of the National Bankitaly Company, we wish to point out that according to section 361 of the Civil Code, subdivision 7, upon merger of two corporations, the surviving corporation "shall succeed, without other transfer, to all the rights and property of each of the constituent corporations". This lack of necessity for formal transfer is illustrated also in the case of *Estate of Barreiro,* 125 Cal. App. 153 [13 Pac. (2d) 1017], where it was held that even where a corporation has been nominated executor of an estate, its successor by merger succeeds to said office without further approval of the probate court or the taking of a new oath of office.

Of course, under the statute as it now stands, the better practice would be for any person or corporation to register a change of name with the proper officer in charge of the stock records of the corporation in which it is the holder of shares to obviate the possibility of dispute, but where a per-

son or corporation has the same identity as one registered on the corporate books, said person or corporation should not be denied the right to vote because of a mere change in name. This rule applies equally to the argument that the stock registered in the name of Carrie A. Thomas should not have been voted by the proxy of Carrie A. Procter, formerly Carrie A. Thomas.

Furthermore, in the instant case, the Corporation of America voted its stock without objection from the date of its merger in 1930, until the date of the special meeting of October 15, 1938; all of the shareholders knew of the merger and the Corporation of America was recognized in the minutes of numerous meetings as among the shareholders present; the proxies presented at the meetings began ''That the undersigned, Corporation of America, formerly National Bankitaly Company, does hereby . . . '', and C. A. Parlier himself on at least one occasion held and voted such a proxy; in addition, representatives of the Corporation of America were permitted to examine the books of the I. N. Parlier Estate Company. There seems to be little reason in either law or equity for denying the Corporation of America its right to vote herein.

 We have examined the call of the special meeting which is criticized by defendants as being insufficient in that it did not state specifically that one of its purposes was to be for the election of a board of directors. The purpose of the special meeting was stated in the call and notice as follows:

''The general nature of the business to be transacted at said special meeting of the shareholders is to consider and determine all questions relating to the property, *management and business policy* of the corporation, including the property derived from the estate of Nora Osterhoudt, deceased, and the interest of the corporation in Parlier Bros., a co-partnership, and to take such action as may be deemed expedient or necessary in connection therewith.''

We feel no hesitancy in deciding that upon receipt of the notice stating that there would be considered at the meeting ''all questions relating to the property, management and business policy of the corporation . . . and to take such action as may be deemed expedient and necessary in connec-

tion therewith'', the shareholders had ample notice that such consideration might involve a change of the officers and directors responsible for such management.

The judgment of the trial court is therefore affirmed.

Gibson, J., Houser, J., Curtis, J., Shenk, J., Edmonds, J., and Waste, C. J., concurred.