[Civ. No. 6709. Third Dist. Jan. 23, 1943.]

KELVIN COX VANDERLIP, as Executor, etc., et al., Appellants, v. LOS MOLINOS LAND COMPANY (a Corporation) et al., Respondents.

Curtiss E. Wetter, Musick & Burrell and James E. Bednar for Appellants.

Pugh & Pugh and James G. Scarborough for Respondents.

THOMPSON, J.—The plaintiffs and cross-defendants have appealed from a judgment which was rendered against them in a suit to secure control of the Los Molinos Land Company and its auxiliary, Coneland Water Company, by ousting three directors from the boards of each corporation and by replacing them with individual plaintiffs as representatives of the estate of Frank A. Vanderlip, deceased, which estate owns 178 shares of the capital stock of the first mentioned company. This demand is made on the theory that the election of the directors of said corporations was controlled by voting 1917 shares of the capital stock of the Land Company, illegally purchased by the Water Company contrary to law. The plaintiffs sought to declare the elections void; to determine that said purchased shares became treasury stock and to prohibit the further voting of said shares. The court adopted findings favorable to the defendants in every respect and accordingly rendered judgment against the plaintiffs. No fraud was alleged or proved, and none is relied upon.

For convenience we shall refer to the Los Molinos Land Company as the "Land Company" and to the Coneland Water Company as the "Water Company."

The complaint alleges that prior to 1911 the Land Company was incorporated to acquire and develop land in Tehama County, with 5000 shares of capital stock of the par value of $100 per share; that all of said shares were originally purchased by Frank A. Vanderlip, W. H. Kiernan, Jay Lawyer, and other associates for the aggregate sum of $700,000; that on June 29, 1937, Mr. Vanderlip owned 178 shares of said stock; that since its organization, Jay Lawyer has been and now is the president and general manager of said corporation, acting through a board of directors; that the Land Company acquired, improved and fully paid for 12,000 acres of land in Tehama County, all of which land was subsequently sold, with the exception of 2,000 acres; that on January 23, 1939, when the complaint was filed, the Land Company owned assets of the aggregate value of $500,000, and owed debts in the sum of only $3,000, and in the mean-

time successfully conducted its business, making substantial dividends to its stockholders.

It is further alleged that the Water Company was incorporated shortly after the organization of the Land Company for the purpose of acquiring water rights and serving the lands belonging to the Land Company with water for irrigation and domestic use; that said Water Company issued 200,-000 shares of capital stock of the par value of $1.00 per share; that ever since January 11, 1921, C. D. Conway has been and now is the president of the Water Company; that he, with the aid of a board of directors, manages and directs the operation of its affairs; that at the time of the filing of the complaint in this suit the Water Company was successfully conducted and then possessed assets of the value of $250,000, and was then indebted in the sum of only $1,500, together with its notes payable to the Land Company in the additional sum of $52,000.

The complaint alleges that Frank A. Vanderlip died testate on June 29, 1937, possessed of considerable property, including 178 shares of the capital stock of the Land Company, and upon proceedings duly had in the Surrogate's Court of New York, the plaintiffs were appointed and qualified as executors of his estate; that by means of a previous declaration of trust executed by said deceased person the plaintiff, The National City Bank of New York, was appointed trustee of 1440 shares of the stock of said Land Company, of which trust the individual plaintiffs were beneficiaries.

The gist of plaintiffs' charges is that the Water Company is wholly subsidiary to and controlled by the Land Company which owns its entire capital stock, and that the corporations operate by means of interlocked boards of directors; that on December 18, 1934, Walter M. Murphy owned 1642 shares of the capital stock of the Land Company which were thereafter illegally purchased by the Water Company, contrary to the provisions of section 342 of the Civil Code, for the sum of $34,482; that said stock was purchased from the surplus earnings of the last-mentioned company, except for the sum of $24,000 which it borrowed from the surplus funds of the Land Company; that on November 11, 1935 the Water Company illegally purchased from J. P. Kiernan 250 shares of the Land Company stock for the sum of $5,500, with the surplus funds of the Water Company; that on May 12, 1938, the Water Company illegally purchased from Rose O'Neal

25 shares of the Land Company stock for the sum of $300, which were paid for from the funds of the Water Company; that on the last-mentioned date Jay Lawyer, president of the Land Company and a director of both companies, borrowed from the Water Company on his promissory note the sum of $20,000, with which he paid in part for the previously-mentioned shares of stock; that the individual plaintiffs own ten per cent of the capital stock of the Land Company, and are entitled to representation on the boards of directors of both companies.

It is finally asserted the officers and directors of both companies violated their trust by illegally purchasing capital stock as above related, contrary to section 342 of the Civil Code, and by other acts detrimental to the stockholders of said corporations; that the officers and directors of the Land Company threaten to reduce its capital stock from $500,000 to $250,000, and to change the par value of said stock from $100 to $50 per share, unless restrained from so doing, contrary to the welfare of the corporation and against the interest of the stockholders of both companies.

The complaint contains three separate causes of action based on similar allegations, except that the second count further charges that the officers and directors of the Water Company unlawfully authorized the loan of $20,000 to Jay Lawyer previously mentioned and did fail to give legal notice of the annual meeting of said corporation. The third count further charges that the officers and directors of the Land Company threaten to unlawfully reduce the capital stock and the par value thereof to one-half the original amounts thereof to the detriment of the corporation and its stockholders.

The complaint prays that the defendants be enjoined from changing the amounts of the capital stock or the par value thereof of the Land Company, and from exercising the right to vote 1917 shares of said stock held by the Water Company; that said stock which was illegally acquired by the Water Company be declared to be treasury stock of the Land Company; that the rescission of the purported sales of said shares of stock to the Water Company, and the purported subsequent sales thereof to Jay Lawyer be declared to be void, and that three members of each ʲoard of directors be removed from office and that the vacancies created thereby be filled by the election of the individual plaintiffs as representatives of the estate of Frank A. Vanderlip, deceased.

The answer of the defendants admits the illegal purchase of said 1917 shares of the Land Company's stock from Murphy, Kiernan and O'Neal, but alleges that said stock was purchased in good faith for the best interest of the corporations and their stockholders and that the purported sales were subsequently rescinded by mutual consent of all interested parties and that everything of value paid therefor by the Water Company, together with interest thereon and costs were restored to the Water Company; that the Water Company lost nothing by virtue of said void purchases. It is further alleged the former owners were unable to restore said sums of money and that by mutual written consent of all interested parties said shares were thereupon sold and conveyed to Jay Lawyer who paid to the Water Company the full purchase price thereof together with interest and costs; that the former owners and the Water Company waived all claims to said shares. The answer further alleges that the capital stock of the Land Company and the par value thereof were by resolution duly adopted, reduced to one-half the original amounts thereof, and that a regular meeting of the stockholders was called pursuant to law, for the purpose of ratifying said changes, but that no action thereon was taken on account of the temporary restraining order which was issued in this action. The answer recites the reasons for making said changes, and asserts that said action is for the best interest of the corporation and the shareholders thereof; that none of the alleged acts of the officers or members of the boards of either company were subversive or detrimental to the welfare of either of the companies or their stockholders; that Jay Lawyer became and is the bona fide owner of said purchased stock; that both of said corporations have prospered financially; that the said Frank A. Vanderlip, deceased, never took any active part or interest in the management of said corporations, but relied solely on the judgment and ability of the officers and directors of the respective companies, to the time of his death. The answer prays that the relief sought by the plaintiffs be denied and that the defendant, Jay Lawyer, be adjudged to be the owner of said purchased stocks together with the legal rights incident thereto, free from all claims of the plaintiffs.

The individual directors of both corporations filed a cross-complaint making similar admissions and allegations to those which are included in the answer.

The court adopted findings favorable to the defendants and cross-complainants in every essential respect. Judgment was rendered in favor of the defendants and cross-complainants to the effect that the plaintiffs take nothing by their action and that Jay Lawyer is the owner of and entitled to the absolute use and control of said purchased shares of the capital stock of said Land Company, together with all rights incident thereto. From that judgment the plaintiffs have appealed.

We are of the opinion the findings and judgment are adequately supported by the evidence.

It will be observed this is not a stockholders' suit for alleged detriment to either of the corporations which are involved in this litigation. It is an action by and on behalf of individual stockholders, in their personal capacity, to secure a judgment declaring that certain shares of the capital stock of the Land Company be deemed to be treasury stock, and to enjoin the voting of those shares pending the trial of this case, and to oust those directors from the board of each corporation.

In the absence of allegations and proof of fraud, the presumption is that the directors of a corporation act for the best interest of the stockholders, and the stockholders may not sue in their individual names for alleged injuries or detriment to the corporation or for the collective rights of the stockholders. In 4 Thompson on Corporations, 2nd ed., p. 1015, sec. 4550, it is said:

"The general rule is that neither a stockholder nor any number of stockholders have the right to sue in their own names or to use the corporate name for the prosecution of an action at law on account of any right of action which may exist in favor of the corporation. And subject to exceptions hereafter to be considered the rule is the same in equity. In other words a stockholder cannot sue individually for injuries affecting the corporate or collective rights. This duty the law devolves on the directors as the trustees and agents of the corporation, and, in the absence of a charge of fraud or collusion it will generally be presumed that the directors are acting for the best interest of the corporation."

The court found that the shares of stock formerly belonging to Murphy, Kiernan and O'Neal were acquired by the Water Company in good faith, free from fraud and without

detriment to either the stockholders or to the corporations, but technically in violation of section 342 of the Civil Code, and that said shares "did not become and *were not thereafter treasury shares* of either of the defendant corporations." We may assume that if said shares were illegally acquired by the Water Company in violation of section 342 of the Civil Code, even though they were secured in good faith, the proposed purchases were voidable and the owners had a right by mutual consent to subsequently sell and convey them to Jay Lawyer upon restoring to the Water Company the full consideration therefor. The appellants concede that said shares were illegally acquired by the Water Company. On page 26 of their opening brief they say in that regard:

"The trial court found in this case that Murphy, Kiernan and O'Neal shares were acquired in violation of C. C. 342, and *appellants do not intend to attack this finding*, although the evidence was conflicting."

■ We are convinced the shares of the Land Company which were purchased by the Water Company from Murphy, Kiernan and O'Neal did not, by virtue of the invalidity of those purchases or otherwise, become treasury shares of either corporation. In their closing brief the appellants concede that these shares of stock were not treasury shares of the Water Company. Nor do we believe they became treasury shares of the Land Company. They were neither acquired nor held by the company which issued them. They were shares of the Land Company acquired and held by the subsidiary Water Company. We are cited to no authority holding that shares of a parent corporation automatically become its treasury shares by the mere acquiring or holding of such shares by its subsidiary corporation. ■ The definition of "treasury shares" which is found in section 278 of the Civil Code indicates that the term applies only to the stock of the corporation which issues the shares, and not to an auxiliary or subsidiary company. That definition reads:

" 'Treasury shares' means shares issued and thereafter acquired by *the* corporation, but not retired or restored to the status of unissued shares." (Italics added.)

In 6a California Jurisprudence, page 407, section 229, it is said:

"The statutory term has obviously no application to shares of one corporation held in the treasury of another, and no such application of it should be made."

In 4 Thompson on Corporations, 2nd ed., p. 51, sec. 3436, it is said in that regard:

"A modern writer already quoted has given a very accurate and complete definition of treasury stock as follows:

" 'Treasury stock is issued and outstanding stock *that has come into possession of the corporation which issued it* by purchase, donation, or in liquidation of a debt. . . .' " (Italics added.)

We conclude that the said capital stock of the Land Company which was acquired by the subsidiary Water Company as above related, and which was not in possession of the corporation which issued it, may not be deemed to have become its treasury stock, under the circumstances of this case.

Assuming that a corporation may not directly or indirectly vote stock which it owns for the election of directors, or otherwise (*Lawrence v. I. N. Parlier Estate Co.*, 15 Cal.2d 220, 231 [100 P.2d 765]), and that the rule applies to the stock of a parent corporation held by its subsidiary company, which we do not concede, the appellants may not complain of that fact in the present case because neither the corporations nor the stockholders were injured thereby. It has been held that the elections of officers at a general or special election is not necessarily void unless it also appears that the illegal votes cast therefor were sufficient in number to have changed the result of the election. (§ 8514, Elections Code, formerly § 1114, Code Civ. Proc.; 20 C.J. 255, § 353.)

We are cited to no evidence in this case that the election of directors would have been changed if the illegally acquired shares had not been voted thereat. The complaint alleges that the Land Company issued 5000 shares of capital stock, all of which were purchased by various stockholders; that Vanderlip owned only 178 shares, and that the total number of shares which were purchased from Murphy, Kiernan and O'Neal were 1917 shares. The appellants failed to object to the voting of the last-mentioned shares at the election of directors. We assume the same directors would have been duly elected if those shares had not been voted. No fraud in the election of directors was alleged or proved. The court specifically found that all of the challenged acts of the defendants were performed in good faith, and were for the best interest of the corporations and stockholders; that none of said acts were dominated or controlled by the defendant Jay Lawyer, or by any of the other officers or directors of either

of the corporations, and that the appellants were not injured or damaged thereby. There is substantial evidence to support those findings. We therefore conclude that the voting of the illegally-acquired shares, under the circumstances of the present case, was harmless. None of those shares were voted by the Water Company after the commencement of this action.

The appellants contend that the rescission or cancellation of the sales to the Water Company of the Murphy, Kiernan and O'Neal shares of stock, and the subsequent transfer of those shares to Jay Lawyer were void for the reason that the first-mentioned sales were fully consummated, and rescission of the transactions would not lie under sections 3406 and 3407 of the Civil Code, because the consideration therefor was not completely restored to the Water Company. The appellants further claim that the subsequent purchase of those shares by Jay Lawyer was void because they were paid for in part by a loan of $20,000 which he procured from the Water Company contrary to the inhibitions of section 366 of the Civil Code, which provides in part:

"No corporation nor any of its subsidiary corporations shall make any loan of money or property to or guarantee the obligation of (a) any director or officer of any such corporations . . . ."

We are of the opinion the appellants may not complain of that transaction in the absence of proof of fraud or detriment suffered by them on that account. The court found that the transaction was consummated in good faith, and that neither the corporations involved nor the stockholders were injured or damaged thereby. There is substantial evidence to support those findings. The shares in question were purchased by the Water Company from individuals who were financially embarrassed and anxious to sell them. They were purchased by the Water Company at a reasonable value thereof to prevent them from falling into the hands of strangers to the corporation, but contrary to the provisions of section 342 of the Civil Code, which provides in part that:

"A corporation may not purchase directly or indirectly any shares issued by it or by any corporation by which it is controlled, except as follows: . . . ."

That section specifies various exceptions to the foregoing general rule. None of those exceptions include the circumstances or conditions under which the stock was purchased in the present case. The sales were therefore void. The Water

Company was so advised. The court so determined. There is evidence to support that finding.

For the reason that a serious question existed regarding the Water Company's title to the shares on account of the illegal purchase and to save the possibility of future litigation and trouble, the Water Company, Jay Lawyer, and the former owners of the shares entered into a written agreement rescinding and cancelling the purported sales of said shares to that company upon restoration to it of everything of value which was paid therefor. The former owners were unable to restore the purchase moneys, and it was mutually agreed between the parties that said stock would be resold and conveyed to Jay Lawyer for the same amounts paid therefor by the Water Company, plus six per cent interest on said sums during the time the company held possession of said stock. The entire purchase price of the Murphy stock was $34,482, plus six per cent interest, which was paid in cash to the Water Company, except the sum of $20,000, which portion of the purchase price was paid by the execution and delivery to the company of Jay Lawyer's promissory note for that amount. That note was accepted by the corporation as part payment for said stock, and the shares were regularly transferred to Lawyer by the mutual consent of all interested parties.

Regarding the market value of said purchased stock, there may be some conflicting evidence, but there is substantial proof that Lawyer paid the Water Company the full market value of the stock. At least the company was repaid all that it invested in the stock. The appellants do claim that the company should have been paid seven per cent interest on the original purchase price instead of six per cent. We think there is no substantial merit in that contention.

The appellants also claim that Lawyer's delivery to the Water Company of his note of $20,000 in part payment for the stock amounted to a loan of that sum of money by said corporation, contrary to the provisions of section 366 of the Civil Code. We think not.

We are of the opinion the Water Company was authorized to rescind and cancel the agreement to purchase the stock in question, by mutual consent of the parties thereto, under the provisions of section 1689 of the Civil Code, to avoid any cloud or question regarding the validity of its title thereto.

The last-mentioned section provides that:

"A party to a contract may rescind the same in the following cases only: . . .

"5. By consent of all the other parties. . . ."

█ It has been frequently held that the doctrine of rescission applies to cancel illegal contracts. It applies to cancel illegal deeds to real property on the ground that such conveyances "constitute a cloud on the true title." (12 C.J.S. 970, § 22.)

█ The Water Company which acquired the said shares of stock contrary to the provisions of section 342 of the Civil Code certainly was authorized to rescind that purported sale by mutual consent of all interested parties upon restoration to it of all moneys which it paid on that account. We assume that transaction could be legally rescinded by mutual consent, even though the corporation acquired some title to the stock, for the purpose of saving the corporation and its stockholders vexatious suits and expensive litigation in the attempt to remove the cloud from its title to the stock.

We therefore hold that the Water Company was authorized to and that it did rescind the purported sales of stock, with the mutual consent of all interested parties, and that everything of value which it paid on that account was restored to that company. The court so determined.

█ That stock was subsequently sold and transferred to Jay Lawyer by the mutual consent of all parties, for the same aggregate sum paid for it by the Water Company, which was the reasonable market value thereof, plus six per cent interest and costs. It is immaterial whether Lawyer derived his title from the Water Company or from the original owners of the stock, since the sales were made with the mutual consent of all parties. No injury resulted to the corporation, its stockholders or the plaintiffs.

█ Section 366 of the Civil Code was not violated by the giving of Lawyer's promissory note to the Water Company for $20,000 in part payment of the purchase price of the Murphy stock. We assume that was a good and valid note. There is no evidence to the contrary. It was accepted by the company as part payment for the stock. We think it may not reasonably be said that transaction constituted a loan from the company. It was a bona fide payment, which was duly accepted by the corporation as such. There is no contention that transaction was fraudulent or that it was not consummated in good faith. The findings of the court in that regard were favorable to the respondents. █ Since we assume the giv-

ing of that note did not constitute a loan from the Water Company, it was not necessary that the acceptance of the note as part payment for the stock should be approved by two-thirds of the stockholders pursuant to section 366 of the Civil Code, since it applies only to *loans* which are made by the corporation to its officers or directors and not to valid promissory notes accepted as part payments for property sold to purchasers thereof.

██ There is adequate evidence to support the findings that the sales of the Land Company stock to Jay Lawyer were for a fair and reasonable consideration, not disproportionate to the full market value thereof. There is conflicting evidence regarding the market value of said stock, but several witnesses testified that it was then actually worth only from $12 to $21 per share. The appellants offered no affirmative proof in rebuttal of that evidence. If the purported sales of stock to the Water Company were actually rescinded on the ground that the purchases were illegal, it is immaterial whether the subsequent sales to Jay Lawyer were for full market value or not. If the rescission by mutual consent of the respective parties was lawfully made and everything of value which was paid by the Water Company was actually restored to it, the sales were thereby cancelled and the former owners of the stock were the only ones entitled to complain of a lack of consideration. But assuming the Water Company had some title which might justify stockholders acting in their individual capacity to complain of that transaction on account of a lack of consideration, still there is adequate evidence to support the finding that the stock was sold for its full market value. The evidence is uncontradicted that the capital stock of said corporation had no fixed market value and that it was not listed on the stock exchange. Mr. C. D. Conway, the secretary of the Land Company, testified that the stock of the Los Molinos Land Company was not listed on the stock market, and that it had no fixed value. He testified that several blocks of that stock were sold in 1937 for $12 per share. Other witnesses testified that the shares of that company were worth from $12 to $21 per share. Mr. J. C. Thomson, a certified public accountant who had audited the books of the Land Company since 1932, testified from his own knowledge of the income, assets and liabilities of that company, that the stock was then worth about $21 per share. The plaintiffs introduced no evidence to the contrary. That showing sufficiently supports

the finding that said stock was not sold to Jay Lawyer for less than its actual value. He paid $34,482 for 1642 shares of the Murphy stock, which was $21 per share. He paid $5,500 for 250 shares of Kiernan's stock, which was $22 per share. He bought only 25 shares of Rose O'Neal's stock for the sum of $300, which was $12 per share. These were the exact sums paid by the Water Company for those identical shares of stock. The company therefore lost nothing by that transaction. We may not hold those shares of stock were purchased by Jay Lawyer for sums disproportionate to their actual value.

We are satisfied from a careful examination of the record that the findings of the court are adequately supported by the evidence to the effect that the rescission of the purported sales of stock to the Water Company was accomplished in good faith for the welfare of the corporations and their stockholders, and not for any ulterior purpose or private gain on the part of any of the officers of said companies, that everything of value which was paid by the Water Company therefor was restored to it, and that neither the companies nor their stockholders lost anything thereby. It will unduly extend the length of this opinion and accomplish no useful purpose to quote at length or attempt to analyze the large quantity of evidence which was adduced on that subject. We shall therefore not attempt to do so.

From the foregoing conclusions we are satisfied it necessarily follows that Jay Lawyer had a right to, and that he did lawfully purchase said stock formerly belonging to Murphy, Kiernan and O'Neal in good faith for a fair and reasonable value thereof, that said transaction was not in conflict with the trust which he or any of the other defendants owe to said corporations or their stockholders, and that he thereby became the owner and entitled to the possession of said stock, together with all rights incident thereto. The court therefore properly quieted title to said shares of stock in Jay Lawyer.

We are unable to perceive under the facts of this case how the court could have determined in this suit by minority stockholders in their individual capacity, in the absence of allegations or proof of fraud, that the directors of the Water Company were not authorized to sell and convey shares of stock which were acquired and held by that company contrary to the provisions of law, for a fair and reasonable consideration which resulted in restoring to the company the entire sum of

money which it had expended on that account. Nor do we see how the court, under such circumstances, would be authorized to oust from office any of the duly elected directors of the companies, or to replace them with the individual plaintiffs in this action. We are satisfied the court properly denied that relief and determined that the plaintiffs take nothing by this suit.

The judgment is affirmed.

Schottky, J. pro tem., and Adams, P. J., concurred.