[Civ. No. 4761. Fourth Dist. Nov. 16, 1954.]

BIRCH RANCH AND OIL COMPANY (a Corporation), Respondent, v. RUTH SMITH HOPKINS et al., Appellants.

Head, Jacobs, Corfman & Jacobs for Appellants.

Leland S. Davis and William H. Haupt for Respondent.

MUSSELL, J.—This is an action for declaratory relief, dissolution of a partnership, if found to exist, or, in the alternative, for partition.  In their answer defendants claim an interest of at least 33½ per cent in the property involved, deny generally the allegations of the complaint and seek an accounting.  The trial court found that a receiver should be appointed, the property sold and that the proceeds from the sale should be divided as follows:

Otis Birch, M. Estelle Birch, B. F. Con-
    away and Anna M. Conaway .........70-17/18%
Louise Smith Hopkins .................14-19/36%
Ruth Smith Hopkins ..................14-19/36%

An interlocutory decree was entered and the receiver sold the property.  Final judgment was entered based upon findings of fact and conclusions of law and the interlocutory decree, and a motion for new trial was denied.

Appellants state that this appeal is taken from that portion of the findings of fact, conclusions of law and judgment wherein it was found that A. Otis Birch, neither as an individual, director or managing agent of the Menges Oil Company, nor manager of the Birch Oil Company, wrongfully used any property of the defendants or of the Menges Oil Company for his own profit or for any purpose, or at any time obtained or sought to obtain any advantage over the defend-

ants Hopkins by misrepresentation, concealment, threat, undue influence or adverse pressure of any kind, and that A. Otis Birch had not violated any fiduciary relationship or duty to the appellants. They contend that the evidence does not sustain the findings, conclusions and judgment and that they are entitled to an accounting in accordance with the percentages claimed by them.

The Menges Oil Company was incorporated with an authorized capital stock of $90,000, divided into 90,000 shares of the par value of $1.00 each and the corporation owned 21.16 acres of proven oil property in Orange County. This corporation was dissolved on August 19, 1911, and at that time A. Otis and M. Estelle Birch owned 43,850 shares, B. F. and Anna M. Conaway owned 20,000 shares, and Louise and Ruth Smith, defendants herein, owned 26,150 shares. In January, 1911, the Menges Oil Company had four producing wells on the property and were drilling well No. 5. This well came in as a "gusher" on March 28, 1911, and produced approximately 2,480 barrels per day. On January 17, 1911, the stock of the Menges Oil Company was held and owned in the following manner:

| | |
|---|---:|
| Mr. and Mrs. A. Otis Birch | 15,000 |
| Mr. and Mrs. Conaway | 8,000 |
| Ruth and Louise Smith | 26,150 |
| Treasury shares, Certificate 24 | 5,000 |
| Porter | 9,750 |
| Dawes | 4,925 |
| Mathews | 3,275 |
| Huff | 1,250 |
| Campbell | 1,250 |
| Edwards | 1,250 |
| Bishop | 5,000 |
| Tedford | 1,500 |
| Ainsworth | 1,750 |
| Travis | 500 |
| Thomas | 650 |
| Blee | 1,000 |
| Williams | 3,750 |
| Total issued shares | 90,000 |

On January 18, 1911, Birch acquired an option to purchase the shares owned by Porter and thereafter and until March 14, 1911, acquired similar options from other stockholders. These options provided for the purchase of shares on terms and allowed three months for the payment of twenty-five per

cent of the purchase price, the balance payable in one year. Birch acquired such options on 35,850 shares as follows:

| | |
|---|---:|
| Porter | 9,750 |
| Mathews | 3,275 |
| Huff | 1,250 |
| Campbell | 1,250 |
| Bishop | 5,000 |
| Tedford | 1,500 |
| Travis | 500 |
| Thomas | 650 |
| Edwards | 1,250 |
| Ainsworth | 1,750 |
| Blee | 1,000 |
| Dawes | 4,925 |
| Williams | 3,750 |
| Total shares | 35,850 |

Birch testified that in addition to the option shares which were placed in escrow, he purchased in March, 1911, 5,000 shares from one Morrison who had purchased them from the corporation in February, 1911.

On April 6, 1911, the Menges Oil Company issued its certificates Nos. 95, 96 and 97, each for 10,975 shares of stock to the First National Bank of Los Angeles, pledgee, and on April 10, 1911, issued another certificate to said bank, pledgee, for 4,075 shares, making in all a total of 37,000 shares of pledged stock. This stock was pledged by Birch as security for a loan to him by said bank of the sum of $23,000. Birch testified in this connection that this money was loaned to him in three different installments to apply on the purchase of the stock that was then in escrow; that he used this and other money borrowed and obtained from other sources to release the pledged stock from escrow; that at the time the pledged certificates were issued he had 12,900 shares of his own; his wife had 2,100, and the Conaways' shares, numbering 8,000, were available to him. He had purchased the Dawes shares, numbering 4,925, 5,000 Bishop shares and 5,000 Morrison shares, or a total of 37,925 shares, 925 shares in excess of the pledged stock issued; that the shares pledged to the First National Bank were the shares he purchased through the escrow and that he did not use any of the Menges Company's corporate funds or any funds of the defendants to purchase the stock in escrow; that when he obtained stock certificates from the escrow he reissued them as pledged shares and de-

livered them to the First National Bank as security for the loan of $23,000.

Louise Smith Hopkins was born in November, 1891, and her sister, Ruth, in November, 1893. Following the death of their mother in 1906, Birch assisted them with their financial affairs until their marriages in 1917 to Messrs. Hopkins. On August 19, 1909, Birch was appointed guardian of these girls and acted as such until February 23, 1912, when he was discharged as guardian in a proceeding in the superior court. After his discharge, he carried their funds in a bank account in his name until their marriages in 1917, the account being in his name as "trustee" solely for the purpose of distinguishing their account from his. He was not employed as trustee "but continued to accommodate them in the handling of their financial affairs" and it does not appear from the record that Birch used any of the funds of either of said wards in purchasing the escrow stock.

When Birch received all of the escrow stock he and his wife owned 43,850 shares, Mr. and Mrs. Conaway, who were the parents of Mrs. Birch, owned 20,000 shares and the Smith sisters who were nieces of Birch, owned 26,150 shares. Proceedings were then commenced to dissolve the corporation so that the business could be carried on as a partnership. A petition was filed in the superior court reciting that the corporation had 90,000 shares of stock issued and outstanding. The court found all of the allegations of the petition to be true and on August 19, 1911, decreed that the corporation be dissolved. On September 1, 1911, Menges Oil Company conveyed the 21.16 acres involved to Mr. and Mrs. Birch and Mr. and Mrs. Conaway and the Smith sisters as copartners doing business as Birch Oil Company, a copartnership. The interests of the various partners were not stated in the deed or in the decree of distribution. Upon the dissolution of the corporation the business was conducted under the name "Birch Oil Company, a partnership." This partnership was set up on the books of the Birch Oil Company as showing that the Birches and Conaways owned 70-17/18 per cent and the Smiths 29-1/18 per cent, on the basis of the stock owned by the parties, the Smiths owning 26,150 shares and the Birches and Conaways 63,850 shares. Dividends were paid on this basis from 1911 to the time of the filing of the instant action.

In 1919 the partners executed a written partnership agreement. The articles of copartnership recited that the partnership had been in existence since the dissolution of the Menges

Oil Company under the same terms and rights as therein specified and provided that the interests of the partners in the partnership were as follows:

B. F. Conaway and Anna M. Conaway ..35-17/36%
A. Otis Birch and M. Estelle Birch ......35-17/36%
Louise Smith Hopkins ................14-19/36%
Ruth Smith Hopkins ................14-19/36%

The percentage of interests of the partners as stated in the articles of partnership was the same as the proportionate stock interests in the Menges Oil Company at the time of its dissolution and from that time on the percentage of profits paid to the defendants remained constant and was about 29 per cent based on a distribution of 26,150/90,000 of the total. Distribution of the profits was made on this basis until 1946 without objection on the part of the defendants or either of them.

In 1926 the Birches purchased the interest of the Conaways in the Birch Oil Company partnership and in October, 1934, the Birches transferred their interest in said partnership to the Birch Ranch and Oil Company, the plaintiff in this action. Thereafter this corporation and appellants Hopkins were considered as the Birch Oil Company partnership.

Appellants first contend that their uncle, A. Otis Birch, violated his fiduciary relationship with them as their guardian and trustee and as director of the Menges Oil Company; that they were defrauded and Birch enriched himself when he used stock certificates numbered 95, 96, 97 and 98 and pledged them to the First National Bank of Los Angeles. The trial court found contrary to this contention and we conclude that this finding is supported by substantial evidence and, therefore, cannot be here disturbed. (*Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689].)

There is substantial evidence that Birch had control of 37,925 shares of stock of the Menges Oil Company when he caused the pledged shares to be issued. The Smith sisters owned 26,150 shares and their holdings and interest in the partnership business remained the same for many years. Their stock was not used or pledged by Birch and there is no evidence that funds belonging to them or either of them were used by Birch for the purchase of stock. Birch was using his own stock and that being acquired by him for the purpose of obtaining outstanding shares, thus increasing his holdings. While it is true as contended by appellants that directors of a corpora-

tion are fiduciaries and bear a fiduciary relation to the corporation and stockholders (*Remillard Brick. Co.* v. *Remillard-Dandini*, 109 Cal.App.2d 405 [241 P.2d 66]), it does not appear that defendants were in any way defrauded by Birch. There was no illegality in the purchase by him of the shares of other stockholders, provided such stock was purchased in good faith for a fair and reasonable value and not in conflict with his trust. (*Vanderlip* v. *Los Molinos Land Co.*, 56 Cal.App.2d 747, 760 [133 P.2d 467].) The evidence in the instant case supports the inference that Birch paid a fair and reasonable value for the stock purchased by him and there is no evidence that any of the vendors of such stock were dissatisfied with the price paid. The record shows that the defendants, after attaining their majority and in 1919 on advice of counsel, executed articles of copartnership setting forth the interest of each partner and reciting "that these articles are evidence of the agreement heretofore and at present existing between them"; that the books of the partnership showed the issuance of the alleged stock; that for many years defendants acquiesced in and acted under these articles of copartnership. Fraud was not alleged by defendants in their answer, and the record substantially supports the trial court's finding that Birch did not obtain any advantage over the defendants by misrepresentation, concealment, threat, undue influence or adverse pressure of any kind.

Appellants next contend that Birch purchased 5,000 shares of treasury stock at a price less than its enhanced selling value. This contention is without merit. These shares were purchased by J. Berlin, Jr. from Dr. Menges prior to 1902 and are accounted for in the minutes of the corporation. Prior to 1911 they became treasury shares and by resolution of February 4, 1911, the board of directors ordered them sold at $2.00 per share, this being the same price other stockholders were asking for their stock in the options taken by Birch. The shares involved were sold by the corporation to a Mr. Morrison at $2.00 per share and were evidenced by certificate No. 94. About March 15, 1911, Birch purchased these shares from Morrison at $2.50 per share.

Appellants further contend that in 1911 Menges Oil Company disbursed $160,000 to Birch and Conaway which was not accounted for to the Birch Oil Company. This argument apparently is based on the testimony of George Vacher, an accountant who was employed in 1923 to examine the books and

records of the Menges Oil Company. He testified that the books showed that the following payments were made:

| | |
|---|---:|
| A. Otis Birch | $ 41,859.04 |
| A. Otis Birch, Guardian | 40,156.48 |
| Anna M. Conaway | 37,000.00 |
| S. E. Minter | 41,500.00 |
| | $160,515.52 |

He further testified that he did not remember whether these payments were made in a series or on which dates they were made; that the percentage of profits paid to defendants Ruth Smith Hopkins and Louise Smith Hopkins had remained constant and that approximately 29 per cent of the profits had always been paid to them. The payment to Birch of the sum of $40,156.48 as guardian and the payments to the others would indicate that these sums were paid as a division of the profits. There was no testimony to the effect that this money was wrongfully paid out at the direction of Birch.

■ Finally appellants argue that Birch, as president, director and manager of the Menges Oil Company obtained information and had knowledge of the fact that well No. 5 was likely to become a large producer and with this information obtained options to obtain stock of various stockholders. However, evidence was introduced to the effect that for some time prior to January 18, 1911, there had been discussions among the stockholders relating to the sale of the corporation and that the company was in poor financial condition; that neither Birch nor anyone else in this field expected anything other than a moderate well from information known to them and no preparation was made for storage of any large amount of oil.

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied December 13, 1954, and appellants' petition for a hearing by the Supreme Court was denied January 12, 1955. Schauer, J., was of the opinion that the petition should be granted.