**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

CHRISTIE MANSON & WOODS LTD.,
a United Kingdom corporation,

                Plaintiff - Appellant,

   v.

HALSEY M. MINOR,

                Plaintiff - Counter-Defendant
                - Appellee,

   v.

CHRISTIE'S INC.,

                Defendant - Counter-
                Claimant - Appellant

No. 10-16373

D.C. Nos.   3:08-cv-05445-WHA
             3:09-cv-00471-WHA

MEMORANDUM*

Appeal from the United States District Court
for the Northern District of California
William H. Alsup, District Judge, Presiding

_____

\*    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

Argued and Submitted December 6, 2011
San Francisco, California

Before: LUCERO,** CALLAHAN, N.R. SMITH, Circuit Judges.

Appellants Christie's Inc. ("Christie's") and Christie Manson & Woods Ltd. ("CMW") appeal the district court's entry of judgment following a jury trial. Appellee Halsey Minor ("Minor") is an individual art collector who bid over $12 million for six paintings at two auctions held in the Summer of 2008 by Christie's and CMW respectively. During this time, Minor also consigned a collection of artworks by Richard Prince (the "Prince Artworks") with a Christie's sibling-company, Haunch of Venison Ltd. ("HOV") in London. Appellants contend that the district court improperly instructed the jury on several issues of California law.

Appellants assert that the district court erred in: (1) refusing to instruct the jury that Christie's had the right to take possession of the Prince Artworks from HOV pursuant to California Commercial Code section 9203(b)(3)(A); (2) instructing the jury that any collateral rights Christie's may have had in the Prince Artworks were superceded if the jury found that Christie's represented to Minor that it would release the artworks to him; (3) directing the jury to disregard certain

---

** The Honorable Carlos F. Lucero, Circuit Judge for the Tenth Circuit, sitting by designation.

2

testimony contrary to the court's instructions; and (4) limiting the damages awardable to Christie's and CMW to their lost buyer's premiums (or commission). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.[1]

**1.** Christie's contends that the District Court's Instruction 25, which instructed the jury on California law regarding creditors' rights under security agreements, wrongfully omitted the possible application of California Commercial Code section 9203(b)(3)(A). The district court declined to give an instruction on section 9203(b)(3)(A) and only gave an instruction on the alternative means of gaining rights in collateral under section 9203(b)(3)(B). The relevant parts of subsection (b)(3) require that either "(A) The debtor had authenticated a security agreement that provides a description of the collateral . . . ." or "(B) The collateral is not a certified security and is in the possession of the secured party under Section 9313 pursuant to the debtor's security agreement." Cal. Com. Code § 9203(b)(3)(A)-(B). California law further provides that a description of the collateral "is sufficient, whether or not it is specific, if it reasonably identifies what is described." Cal. Com. Code § 9108(a).

Christie's failed to present the requisite factual basis for an instruction under

---

[1]     Because the parties are familiar with the facts and procedural history, we do not restate them here except as necessary to explain our decision.

section 9203(b)(3)(A).  That subsection defers to the security agreement's "description of the property," and Christie's security agreement describes a security interest only in "any property in our possession owned by the buyer."  The parties entered into this security agreement on May 21, 2008, and the Prince Artworks were not then in Christie's possession.  In fact, Christie's did not obtain the artworks until September 2, 2008.  Consequently, because the Prince Artworks were not in Christie's actual possession at the time the parties entered into the security agreement, the Prince Artworks were not "reasonably identified" as collateral by the agreement's own terms.

In lieu of actual possession, Christie's asserts that it had "effective possession" by virtue of its custody and control over the Prince Artworks while they were in HOV's possession.  However, as properly noted in the district court's Instruction 18, HOV and Christie's are two separate entities and thus, the Prince Artworks were not in Christie's possession at the time it entered into the security agreement with Minor.  Additionally, there is nothing in the terms of the security agreement to suggest that "effective possession" might have created a "reasonably identifiable" security interest.  Under the California Commercial Code, the term "possession" generally means actual possession, not constructive or effective possession.  *See In re Robert Bogetti & Sons*, 162 B.R. 289, 295 (Bankr. E.D. Cal.

4

1993).  Furthermore, possession of property by one corporate entity is not usually deemed legal possession by a related corporate entity.  *See Vanderlip v. Los Molinos Land Co.,* 133 P.2d 467, 472 (Cal. Ct. App. 1943).

Christie's has offered no sound basis for defining the term "possession" in its security agreement as having a different meaning from actual possession.  If Christie's had intended its security agreement to encompass constructive possession, as the drafter of the agreement, it was in the best position to define "possession" to include constructive possession or possession by a sibling-company.  However, it did not do so.  Thus, subsection (b)(3)(A) was inapplicable, and the district court did not err in omitting an instruction on this subsection.

**2.**  Christie's also contends that the district court erred in giving Instruction 18, which instructed the jury that any collateral rights Christie's may have had in the Prince Artworks were superceded if the jury found that Christie's represented to Minor that it would release the artworks to him because such a representation would have been inconsistent with Christie's alleged collateral rights.  We hold that the district court's instruction correctly stated California law because a creditor can waive its contractual rights through subsequent actions that are inconsistent with its rights.  "California courts will find waiver when a party intentionally relinquishes a right, or when that party's acts are so inconsistent with an intent to

5

enforce the right as to induce a reasonable belief that such right has been relinquished." *Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1559 (9th Cir. 1991) (citing *Rheem Mfg Co. v. United States*, 21 Cal. Rptr. 802 (1962)).

Specifically, California courts have found that creditors waive their contractual rights to take possession of collateral under California Commercial Code section 9609 when conversations between the creditor and the debtor lead the debtor to believe that the creditor will not invoke its right to take possession of collateral. *See Varela v. Wells Fargo Bank*, 93 Cal. Rptr. 428, 431-33 (Cal. Ct. App. 1971). In this case, the district court instructed that if the jury found that Christie's made a commitment to Minor that was inconsistent with its collateral rights, then that promise superceded Christie's collateral rights. This instruction fairly and accurately summarized California's law on waiver. It appropriately left to the jury the factual determination of whether Christie's representations to Minor were inconsistent with its asserted rights. The record indicates that Christie's willfully deceived Minor in its representations to him and obtained possession of the Prince Artworks through this deception. Thus, the court did not abuse its discretion in instructing the jury on waiver.

**3.** Christie's also objects to the district court's instruction to the jury to disregard any testimony that was contrary to the court's explanation of the rights

6

and obligations under the Consignment Agreement between Minor and HOV. Christie's complains that this instruction in essence meant that Christie's claimed security interest was "of no consequence, and that Minor had an unconditional right to obtain the works from HOV." This is not a fair reading of the instruction. Instruction 18 does not discuss Christie's rights under the Conditions of Sale. Rather, it accurately states that Christie's "was not a party" to Minor's Consignment Agreement with HOV and that HOV's duty under the Consignment Agreement to return the Prince Artworks to Minor was "not conditioned on any collateral rights Christie's may have otherwise had." The testimony in question concerned Christie's relationship with HOV and was irrelevant to the rights and obligations between HOV and Minor. We hold that the district court properly instructed the jury to disregard any testimony contrary to the express terms of the Consignment Agreement in determining the rights and obligations of the parties under that agreement.

**4.** We find that the district court properly declined to instruct the jury regarding the Appellants' claims for interest and costs because they did not present evidence of these alleged damages. In other words, even though Appellants may have been entitled to these damages contractually, the district court correctly found that they failed to present evidence at trial sufficient to instruct the jury.

Additionally, the court properly declined to instruct the jury on Christie's claim for the $700,000 auction price differential on one of the paintings that was resold. Only the owner of the painting had standing to sue Minor for the difference between the auction price Minor agreed to and the resale price. Christie's was not entitled to the lost value of the owner's property but only its lost buyer's premium so that it would be in the same position as if Minor had fully performed his obligations. *See* Cal. Civil Code § 3358. Finally, the court did not err in declining to instruct the jury regarding CMW's claim for the full price of one of the paintings that CMW purchased from the original seller. The court properly held that CMW's claim for the full auction price was tantamount to a claim for specific performance, a remedy that CMW failed to seek at any time during the litigation.

**AFFIRMED**.